[No. 1354.]

JOHN HUNTER v. THE STATE.

1. THEFT—EVIDENCE.—See the opinion *in extenso* for evidence held insufficient to sustain a conviction for theft, in that it fails to establish any one of the elements of that offense beyond a reasonable doubt.
2. SECONDARY EVIDENCE—PRACTICE.—In criminal cases it is an established rule that the best existing evidence within the reach of the prosecution must be produced, or its absence satisfactorily accounted for, before a resort to secondary or inferior evidence will be sanctioned.

APPEAL from the County Court of Anderson. Tried below before the Hon. W. G. W. Jowers, County Judge.

The opinion discloses the entire case. The punishment awarded by the jury was a fine of twenty-five dollars, and confinement in the county jail for one day.

*Frank Reeves*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

WILLSON, J. The defendant was convicted, upon circumstantial evidence, of the theft of a lot of seed cotton of the value of seven dollars. The cotton was alleged to be the property of W. B. Jackson.

The evidence showed that the defendant cultivated a cotton crop on W. B. Jackson's land, and that defendant owned three-fourths of the cotton gathered from the land, and Jackson owned the remaining one-fourth. The cotton was gathered by the defendant and placed in the field, in a pile, and witnesses who viewed the pile were of opinion that there were thirteen or fourteen hundred pounds of the cotton. Defendant, after gathering and piling the cotton, went to Jackson and told him that he had come to turn over that cotton, and asked Jackson what he must do with it. Jackson told him to haul it to Gee's gin. Defendant replied that the cotton was wet, and could not then be hauled, but he would haul it as soon as it was dry enough. On that same day Jackson left and went to Limestone county, and the pile of cotton was also, on that same day, removed from the field, and defendant sold 295 pounds of cotton on that day to one

Malone. Defendant stated that the cotton he had sold to Malone was cotton which he had raised on his new-ground patch, and was no part of the cotton raised on Jackson's land. Witnesses who had examined his "new-ground patch" gave it as their opinion that not more than fifty pounds of cotton had been produced therefrom.

Defendant, when questioned about what had become of the cotton in the field, said that he had hauled 900 pounds to Gee's gin. He also told one witness that he had turned over the cotton to Jackson in payment of his indebtedness to Jackson. It was shown that W. B. Jackson, the alleged owner of the cotton, was living at the time of the trial, and resided at Mexia, in Limestone county, Texas, and that Gee, the owner of the gin, was also living and resided in the county of the prosecution. The State did not produce either Jackson or Gee to testify in the case, and did not show, or attempt to show, any reason or excuse for failing to produce them.

The evidence is, to our mind, wholly insufficient to support the conviction. There is no sufficient proof even of the *corpus delicti*, that the cotton was in fact stolen by any one. It disappeared from the field, but was it stolen? Two witnesses gave it as their opinion that the "pile" contained 1400 or 1500 pounds of cotton. They did not weigh the cotton, did not examine it particularly, but simply guessed at the weight of the bulk. They may have been mistaken in their estimate. There might have been not more than 900 pounds of cotton in the pile, and the defendant stated that he had hauled 900 pounds to Gee's gin, and this statement was not controverted by the State. If, then, there were only 900 pounds of cotton in the pile, and defendant delivered that 900 pounds at the gin, there was no cotton stolen. If the defendant's statement about hauling the cotton to the gin was false, why did not the State produce Gee as a witness, and prove the falsity of it? Gee resided in the county of the prosecution, and could readily have been produced, for aught that appears from the record.

The defendant was originally a part owner of the cotton with Jackson. It is claimed by the State that he sold his interest in it to Jackson, and that at the time of the taking Jackson was the sole owner of the cotton. The evidence in support of the assumption that Jackson was the sole owner is exceedingly meagre and unsatisfactory, and we are left in reasonable doubt as to the ownership of the cotton at the time it disappeared from

B

the field.   Nor is there any direct proof of a want of consent on the part of Jackson to the taking of the cotton.   The ownership of the property, and the want of consent of the owner to the taking of it, could, we must suppose, have been proved by Jackson, and yet he was not produced as a witness, nor was his absence accounted for by the State.

It is an established rule of evidence in criminal cases that the *best* existing evidence, within the reach of the prosecution, must be produced, or its absence satisfactorily accounted for, before a resort to secondary or inferior evidence will be sanctioned. (*Porter* v. *The State*, 1 Texas Ct. App., 394; *Butler* v. *The State*, 3 Texas Ct. App., 48; *Scott* v. *The State*, Id., 103; *Barnes* v. *The State*, 5 Texas Ct. App., 113; *Somerville* v. *The State*, 6 Texas Ct. App., 433; *Smith* v. *The State*, 10 Texas Ct. App., 420; *Powell* v. *The State*, 11 Texas Ct. App., 401.)

We think the conviction in this case was had upon insufficient and inferior evidence, when better evidence as to the issues involved was within reach of the prosecution; and we think the court below should have granted defendant a new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered October 11, 1882.